IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ANWAR MORALES,       | :  | CIVIL NO. 1:CV-12-1113 |
| Petitioner,          | :  |                        |
|                      | :  | (Chief Judge Kane)     |
| v.                   | :  |                        |
|                      | :  |                        |
| FRANK STRADA,        | :  |                        |
| Respondent           | :  |                        |

## MEMORANDUM

Anwar Morales is a federal inmate who filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 while confined at the Low Security Correctional Institution at Allenwood ("LSCI-Allenwood"), Pennsylvania.[1] In the petition, he contends that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

**I.    Factual Background**

At all times relevant to this petition, Morales was confined at LSCI-Allenwood. He was convicted in the United States District Court for the Southern District of Ohio for conspiracy to distribute drugs and firearms related charges. His projected release date is February 19, 2018, via good conduct time release. On September 17, 2010, Morales was issued an incident report (# 2067634) for refusing to provide a urine sample or to take part in other drug abuse testing. He received a copy of the incident report on the same day. A Unit Disciplinary

---

[1] Morales has never provided the Court with a change of address. However, the BOP website reveals that he is now confined at CI Adams County in Washington, Mississippi. See www.bop.gov. Pursuant to a follow-up phone call to CI Adams County, the Court learned that Morales has been incarcerated there since August 17, 2012. He has never advised the Court of this change of address. The last contact the Court received from Morales was on July 30, 2012, when he requested an enlargement of time to file his traverse.

Committee ("UDC") hearing was held on September 21, 2010, at which it was determined that the matter should be referred to the Disciplinary Hearing Officer ("DHO"). A DHO hearing was held on October 14, 2010, and Morales was found to have committed the prohibited conduct. His sanctions included 30 days disciplinary segregation and the loss of 40 days good conduct time.

Morales files the instant petition challenging the DHO proceedings claiming that he was unable to provide the urine sample for "medical reasons," and that the staff at LSCI-Allenwood did not attempt to ascertain whether he actually did have a medical condition. He claims that he did file an appeal of the DHO decision, but that the Regional Director denied his request.

Service of the petition was directed, and a response thereto filed on July 24, 2012. (Doc. No. 8.) Respondent maintains that the petition is subject to dismissal of the basis of failure to exhaust administrative remedies. It is further argued that even if Morales had exhausted, the petition must be denied because the DHO hearing did not violate Due Process.

On July 30, 2012, Morales filed a motion for stay of the proceedings due to his upcoming transfer to a different facility. (Doc. No. 9.) The motion was construed as a request for an enlargement of time within which to submit a traverse, and was granted. Morales was afforded thirty (30) days to file a traverse. (Doc. No. 10.) No traverse has ever been submitted.

**II.     Discussion**

The BOP disciplinary process is fully set forth in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required

to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Based upon the seriousness of the charges against Morales and the requirement of sanctions greater than could be afforded by the UDC, the instant matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of loss of good conduct time credits. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant

3

question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f)(requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

### A. Exhaustion

Respondent first argues that the petition should be dismissed on the basis of the failure to exhaust administrative remedies. Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts in the Third Circuit consistently have required a petitioner to exhaust his administrative remedies before filing a petition for a writ of habeas corpus. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)(citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)(per curiam)); e.g. Callwood v. Enos, 230 F.3d 627, 632 (3d Cir. 2000). The Third Circuit requires administrative exhaustion for habeas claims raised under § 2241 because "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted). Courts, however, have excused exhaustion when it would not promote these goals. See, e.g.,

4

Gambino v. Morris, 134 F.3d 156, 171 (3dCir. 1998)(exhaustion excused upon petitioner demonstrating futility); Lyons v. United States Marshals, 840 F.2d 202, 205 (3d Cir. 1988)(exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

The BOP has a multi-tier Administrative Remedy Program that is available to inmates for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. §§ 542.10-542.19. First, inmates shall formally present their complaints to staff, and staff shall attempt to informally resolve any issues before an inmate files a request for Administrative Remedy. Id. at § 542.13(a). Second, if an inmate is unable to informally resolve his complaint, he may file a formal written complaint [to the Warden], on the appropriate form within twenty (20) calendar days of the date on which the basis of the complaint occurred. Id. at § 542.14(a). In the event the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty (20) calendar days. Id., § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel (Central Office) within thirty (30) calendar days from the date of the Regional Director's response. Id. The Regional Director has thirty (30) calendar days to respond and the General Counsel has forty (40) calendar days to respond. See id., at § 542.18. An exception is made for appeals of DHO decisions, which are first raised directly to the regional office level and then to the central office level. Id. at § 542.14(d)(2).

In the instant action, Respondent has submitted the declaration of Michael S. Romano, an Attorney Advisor employed by the BOP at USP-Lewisburg, Pennsylvania. As part of Romano's duties, he has access to inmate records and files. (Doc. No. 8, Ex. 1, Romano Decl.) In

reviewing the administrative remedy record of Morales, it reveals that he has only filed one administrative remedy. (Id., Romano Decl. ¶ 4; Attach. C, Administrative Remedy Generalized Retrieval Record.) Remedy #620544-R1 was received in the Regional Office on December 23, 2010. It was rejected on December 30, 2010. (Id.) The reason for the rejection is listed as codes "UTR; RSR; OTH" which means the administrative remedy was untimely, but that Morales was given 10 days to re-submit it. (Id. ¶ 5; Attach. D, Status Codes for Administrative Remedy Sentry Records.) Morales did not re-submit his administrative remedy. As such, Morales' administrative remedy appeal clearly was not exhausted before he filed the instant petition because he had not resubmitted his remedy to the Regional Office, and thereafter received a denial from the Central Office.

      B.        Merits

Even if Morales had exhausted his claims, having reviewed the parties' filings the Court finds that there is no basis for habeas relief in this action. The record shows that there was "some evidence" to support the DHO's finding of guilt following the October 14, 2010 hearing, and that Morales was afforded all of the due process protections that are required where an inmate faces the disallowance of good conduct time.

Morales received adequate notice of the charges against him and was advised of his rights no less than 24 hours before his disciplinary hearing. As set forth in Section 14 of the incident report issued, staff documented that Morales received a copy of the incident report on September 17, 2010, the same day of the incident. (Doc. No. 8, Romano Decl. ¶ 3; Attach. B.) The DHO hearing with respect to this incident was held on October 14, 2012. (Id.) Clearly, Morales received notice in excess of 24 hours. Further, as documented in the DHO report, he

6

was given the opportunity of having a staff representative at the hearing. As indicated on the report, Morales waived his right to a staff representative. (Id.). Morales was also provided with the opportunity to make a statement at his DHO hearing. As documented in the DHO report, Morales denied the charge and indicated that due to a wound to his hip "it was difficult for him to use the bathroom." (Id.) It is further documented in the DHO report that Morales did not request witnesses. (Id., DHO Report, Section III, C.)

In Section III, D of the DHO Report, the DHO documented what evidence he considered in making the determination that Morales committed the prohibited act. In addition to the incident report and the investigation, this evidence included three incident report staff memorandums (a Memorandum from D. Spotts dated September 17, 2010, a Memorandum from K. Feliciano dated September 17, 2010, and a Memorandum from D. Spotts dated October 14, 2010) and the BOP Chain of Custody form for Morales (#44922-061).

The DHO report also set forth the specific evidence relied on to support the finding that Morales had committed the charged act. (Id., DHO Report, Section V.) This evidence included Morales' involvement in the incident as noted in the incident report as provided by Correctional Officer J. Hillyer, the memorandum from D. Spotts dated October 14, 2010 stating that here was no medical information indicating that Morales was unable to provide a urine sample, and Morales' testimony with respect to such inability in light of the medical evidence submitted with the case which showed to the contrary.[2] (Id.) Clearly, based upon the foregoing, there was "some evidence" for the DHO to reach the decision that Morales had committed the charged act.

---

[2] Although Morales attaches medical information in an attempt to support his claim, these documents refer to procedures that post-date the incident by over 1½ years. (Doc. No. 1, Ex. D.)

For these reasons, the Court finds that the petition lacks merit. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANWAR MORALES,** | : | CIVIL NO. 1:CV-12-1113 |
| Petitioner, | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **FRANK STRADA,** | : | |
| Respondent | : | |

**O R D E R**

**AND NOW**, this 6th day of December, 2012, for the reasons set forth in the memorandum accompanying this order, it is hereby **ORDERED** that:

1. The petition for writ of habeas corpus is **denied**.

2. The Clerk of Court is directed to **close this case**.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania